Betty GIBSON, Individually and as Personal Representative of the Estate of Lawrence M. Gibson, deceased, Plaintiff–Appellant,

v.

Dale FOLTZ; John Jabe; John Gauldin; Lewis Herr; Beverly Williams; George Drake; James Roth; Joyce Rinehold; Ozzie Bryant; Larry Kuras; Bill McFarlan; Brad Brager; John Doe; Deputy Grinage; Inspector Moats; and Robert Brown, Jr., Defendants–Appellees.

No. 91–1605.

United States Court of Appeals, Sixth Circuit.

Argued March 19, 1992.

Decided May 4, 1992.

Rehearing En Banc Denied July 30, 1992.

Ernest L. Jarrett (argued and briefed), Detroit, Mich., for plaintiff-appellant.

Brian W. MacKenzie, Asst. Atty. Gen., Chester S. Sugeriski, Jr. (argued and briefed), Office of the Atty. Gen., Corrections Division, Lansing, Mich., for defendants-appellees.

Before: KENNEDY and BOGGS, Circuit Judges; and KRUPANSKY, Senior Circuit Judge.

KENNEDY, Circuit Judge.

This case arises from the December 4, 1986 fatal assault on Lawrence M. Gibson, an inmate at the State Prison of Southern Michigan (SPSM). Plaintiff Betty Gibson, the decedent's wife and personal representative of his estate, brought this action against six individual prison officials. Plaintiff appeals the District Court's orders granting summary judgment in favor of the defendants and denying rehearing. For the following reasons, we AFFIRM the District Court.

### I.

On December 4, 1986, Gibson was an inmate at SPSM and was assigned to the 4 Block East of the prison. Four Block East consists of five levels of cells. The ground level is known as the base and the four upper levels are known as galleries. They are numbered 1st gallery (second level) through 4th gallery (fifth level). At this time 234 cells were in use in 4 Block East. Gibson was housed in cell 46 on the 2nd gallery. His cell was four cells down from the gallery end where the open stairway linking the base and the galleries is located. At the foot of the stairs is the officers' desk for 4 Block East.

Gibson was returning to his cell on December 4, 1986 from the noon meal. It is undisputed that at some point between ascending the stairs to the 2nd gallery and passing cells 50, 49, 48 and 47, Gibson was attacked by a fellow inmate. He was stabbed in the neck with an unknown weapon which caused a ⅞ inch wound and lacerated the right and left jugular veins and the trachea. Gibson made his way to the 4 Block East desk, and emergency medical aid was given to him. He was taken to Foote Hospital where he died in surgery. Inmates told the Michigan State Police that they believed Gibson's assault was related to Gibson selling marijuana in the prison. There has never been a prosecution of any individual or individuals for Gibson's murder.

Plaintiff filed this action pursuant to 42 U.S.C. § 1983 and Michigan state law against Dale Foltz, the warden of SPSM; Deputy Grinage, the assistant deputy warden in charge of housing at the Central complex of SPSM; Inspector Moats, an inspector responsible for review and inspection of staff operations; John Gauldin, a line inspector assigned to cell block 4; Beverly Williams, a corrections officer assigned to cell block 4; and Robert Brown, Jr., Director of the Michigan Department

of Corrections. Plaintiff alleges that defendants were deliberately indifferent to the violence that occurred at SPSM and that as a result of this deliberate indifference, Gibson was fatally assaulted. Plaintiff alleges that defendants' indifference violated Gibson's rights as protected by the Fourth, Fifth, Eighth and/or Fourteenth Amendments. Specifically, plaintiff alleges that Williams failed to execute her duties properly because she failed to detect weapons possessed by inmates and because she was not present on the 2nd gallery when Gibson was assaulted. Plaintiff alleges that Brown, Foltz and Grinage failed to update prison policies intended to protect inmates and staff members, and failed to protect inmates from assault by other inmates when they did not comply with and/or enforce cell search and pat down of prisoners. Plaintiff further alleges that Brown, Foltz, Grinage, Moats and Gauldin inadequately supervised their subordinates, failed to investigate other incidents of inmate stabbings, and failed to take corrective measures to prevent these stabbings.

## II.

■ We review a grant of summary judgment *de novo*, making all reasonable inferences in favor of the nonmoving party. *Storer Communications, Inc. v. National Ass'n of Broadcast Employees & Technicians*, 854 F.2d 144, 146 (6th Cir.1988). Summary judgment is appropriate only when there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986). The inquiry is whether there is sufficient evidence supporting a factual dispute such that a judge or jury is required to "resolve the parties' differing versions of the truth at trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986) (quoting *First National Bank of Arizona v. Cities Service Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968)).

## III.

■ The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments." In *Estelle v. Gamble*, 429 U.S. 97, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976), the Supreme Court acknowledged that the Eighth Amendment could be applied to conditions of confinement. Only those deprivations denying "the minimalized measure of life's necessities" may form the basis of an Eighth Amendment violation. *Wilson v. Seiter,* — U.S. ——, 111 S.Ct. 2321, 2324, 115 L.Ed.2d 271 (1991) (quoting *Rhodes v. Chapman*, 452 U.S. 337, 347, 101 S.Ct. 2392, 2399–2400, 69 L.Ed.2d 59 (1981)). In cases where a prison inmate challenges conditions of confinement, a court must determine whether prison officials acted with deliberate indifference to a prisoner's constitutionally protected needs. *Id.* 111 S.Ct. at 2327. When a prison inmate alleges that prison officials failed to protect him from assault by another inmate, deliberate indifference on the part of the officials to the inmate's risk of injury must be shown. *McGhee v. Foltz*, 852 F.2d 876, 880–81 (6th Cir.1988). Lack of due care for a prisoner's safety by prison officials is insufficient to support a claim of an Eighth Amendment violation. *Id.* at 881.

■ To determine whether a prison official acted with deliberate indifference and thus has inflicted cruel and unusual punishment, it is necessary to determine the official's state of mind. *Wilson*, 111 S.Ct. at 2324. Obduracy or wantonness, not inadvertence or good faith error, characterizes deliberate indifference. *Id.* The long duration of a cruel prison condition may make it easier to establish knowledge and thus intent on the part of prison officials, but the existence of cruel prison conditions does not cause the intent requirement to "evaporate." *Id.* at 2325.

■ Plaintiff alleges that Williams was deliberately indifferent because she failed to follow prison policy by failing to search cells and pat down inmates, and because she was not present on the 1st or 2nd

gallery when the assault occurred. Plaintiff argues that Williams failed to conduct the required searches because these searches are not documented in the daily log books. Williams claims she conducted searches. We believe that Williams was, at most, negligent in being at the base when the stabbing occurred. We further believe that her alleged violations of prison policies do not rise to the level of a wanton infliction of pain. Violations of prison policies which do not rise to such a level do not support an Eighth Amendment claim.

■ Plaintiff also alleges that Foltz, Brown and Grinage were deliberately indifferent to inmate safety because they failed to follow the recommendations of previous studies which identify that the threat of violence exists at SPSM. The fact that the defendants knew that SPSM housed many violent prisoners and that prison violence did occur is not sufficient to constitute deliberate indifference. Although Foltz and the other defendants were in a position to monitor the conditions at the prison, the defendants' alleged failure to lessen the threat of violence within the prison does not rise to the level of wantonness that is required to find an Eighth Amendment violation. There was no evidence that the defendants knew that Gibson was in danger or that any specific dangerous condition existed on 4 Block East. Failure to supervise adequately, especially without a showing that the defendants were aware that subordinates had failed to carry out prison policies, does not constitute a wanton infliction of pain. *McGhee*, 852 F.2d at 881. Viewing the evidence in the light most favorable to plaintiff, we find that the evidence does not support a conclusion that the defendants acted with deliberate indifference to Gibson's safety.

### IV.

As a second issue, the plaintiff asserts that defendants responded to discovery requests in bad faith, that the District Court erred in refusing to enter defendants' default for failure to respond to discovery requests, that it should not have set aside discovery sanctions it had imposed and should have imposed additional sanctions, and finally, that it should not have decided the motion for summary judgment until all discovery requests were disposed of. The record reflects that there were difficulties in securing discovery. However, whether sanctions should be imposed rests within the discretion of the District Court. We see no abuse of discretion. The court found that defendants had substantially complied with the discovery requests. We agree. Thus, there was no basis for entry of default.

Plaintiff complains that so much material was supplied so close to the argument on the summary judgment motion that she was unable to use the material effectively in responding to the motion. Plaintiff's brief failed to identify specifically what material it was that she was unable to bring to the attention of the District Court or which was not supplied. Despite this failure, this Court at oral argument permitted plaintiff to submit to the court a list of specific items and an explanation of the specific prejudice she suffered. She still fails to identify what information was supplied so late that it could not be used in responding to the motion for summary judgment.

■ Plaintiff has identified one item of discovery with which she was not supplied, and the issues affected. She claims that defendants failed to provide a list of changes that were made at SPSM as a result of recommendations made in various studies of SPSM, or a statement that no changes were made as a result of these studies. Plaintiff apparently has the studies—and the changes that have been made. We do not see the relevance of whether the changes were made in response to the studies or for other reasons. Plaintiff states that this information is relevant to establish defendants' deliberate indifference because it would show whether defendants "acted conscientiously and voluntarily when apprised of systemic defects." Unless these changes were constitutionally required, it is immaterial whether the failure to adopt them was the result of deliberate indifference. It is only the deliberate indif-

ference to constitutionally protected rights that is actionable under section 1983. We do not believe that whether changes in prison policy, or a lack of changes were the result of some study, would establish deliberate indifference by the defendants to some constitutionally protected right. Because plaintiff has failed to assert how other documents she seeks would create a question of fact, we have no evidence from which to find that plaintiff has been prejudiced by lack of discovery. We decline to reverse the District Court on this basis.

## V.

Accordingly, we AFFIRM the order of the District Court granting summary judgment in favor of defendants and denying rehearing.