14 F.3d 602
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
 Timothy TAYLOR, Plaintiff-Appellee,
v.
MICHIGAN DEPARTMENT OF CORRECTIONS, et al., Defendants,
Dale E. Foltz; Gwen Bogan; Don Wentworth; A.E. Tessmer;
John Doe, No. 1, Defendants-Appellants.
 No. 92-2426.
 United States Court of Appeals, Sixth Circuit.
 Dec. 22, 1993.
 
 Before: MARTIN and SUHRHEINRICH, Circuit Judges; WELLFORD, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 In this interlocutory appeal, Defendant Dale E. Foltz appeals the district court's denial of his motion for summary judgment based on qualified immunity. We AFFIRM that portion of the district court's order denying summary judgment to defendant Foltz based upon qualified immunity. We DISMISS that portion of the appeal denying summary judgment to Foltz to the extent that it addresses the merits of plaintiff's Eighth Amendment rights claim.
 
 I.
 
 2
 Plaintiff Timothy Taylor, a prisoner with the Michigan Department of Corrections ("MDOC"), alleges that he was raped by another male inmate in November 1985, soon after he was transferred to a barracks-style minimum security institution. Plaintiff is five feet tall, weighs 120 pounds, is mildly mentally retarded, and has a seizure and an adjustment disorder. Plaintiff alleges that defendant Foltz, then warden of the state prison of southern Michigan ("SPSM") violated Taylor's Eighth Amendment right to be free from cruel and unusual punishment by transferring him from the Trustee Division of Jackson ("SMT"), a minimum security institution, to the Camp Program ("Camp Pugsley"), also a minimum security prison but less structured than SMT,[1] despite information in his file that Taylor would not be able to handle great freedom and/or would not be physically safe.[2] Plaintiff claims that defendant Foltz created a pervasive risk of harm by placing him in an unsupervised environment without first determining whether he should be placed there. Taylor also alleges that the risk to him was greater than that to other inmates as he belonged to a specific group of identifiable prisoners, and that Foltz has been aware of the sexual pressure placed on small and vulnerable looking prisoners within MDOC prisons since at least 1974.
 
 
 3
 Foltz maintains that he is entitled to qualified immunity because the law was not "clearly established" at the time of the alleged constitutional violation, and that he cannot be held vicariously liable for the actions of those to whom he properly delegated his authority. Foltz apparently disputes the fact that Taylor was raped, and contends that Taylor volunteered to go to Camp Pugsley. Taylor, of course, denies both of these assertions.
 
 
 4
 The district court ruled that Foltz's operating procedure in reviewing and authorizing transfers might be defective, thereby creating an unconstitutional condition. The lower court also held that plaintiff could be considered to belong to an identifiable group and held that the right was clearly established at the time of the alleged violation. This appeal followed.
 
 II.
 
 5
 We have jurisdiction over this appeal because orders denying summary judgment on the basis of qualified immunity are immediately appealable as "final judgments" under the collateral order doctrine. Mitchell v. Forsyth, 472 U.S. 511, 530 (1985). Qualified immunity is a question of law, which we review de novo. Walton v. City of Southfield, 995 F.2d 1331, 1335 (6th Cir.1993). To the extent that an interlocutory appeal based upon qualified immunity raises issues beyond that issue, we are not required to review them. Rich v. City of Mayfield Heights, 955 F.2d 1092, 1094 (6th Cir.1992,; Huron Valley Hosp., Inc. v. City of Pontiac, 792 F.2d 563, 568 (6th Cir.), cert. denied, 479 U.S. 885 (1986).
 
 A.
 
 6
 As a threshold matter, we must address plaintiff's argument that Foltz has waived the issue of qualified immunity in this interlocutory appeal because Foltz failed to present the issue to the magistrate judge. See Borden v. Secretary of Health and Human Servs., 836 F.2d 4, 6 (1st Cir.1987) (appellant is entitled to de novo review by district court of recommendations to which he objected; he is not entitled to a de novo review of an argument never raised); see also Walsh v. Mellas, 837 F.2d 789, 799-800 (7th Cir.) (prison officials waived right to assert qualified immunity defense on appeal, even though defense was raised in answer, where officials failed to raise issue before district court; district court is not obligated to conduct search for issues which may lurk in pleadings), cert. denied, 486 U.S. 1061 (1988). The magistrate judge, in a footnote, noted that "Defendants did not assert qualified immunity defenses as to Defendants Foltz, Bogan and John Doe." Magistrate Judge's Report and Recommendation, at 17, n. 2. The district court denied qualified immunity to defendant Foltz on the merits, without discussing the magistrate's finding that defendant had waived the defense for purposes of the motion. Memorandum Opinion and Order Accepting Magistrate Judge Cooke's May 11, 1992 Report and Recommendation at 8-9.
 
 
 7
 Our review of the record reveals that Foltz properly pleaded qualified immunity as an affirmative defense, see Defendants Foltz, Tessmer and Wentworth's Answer to Plaintiff's First Amended Complaint at 11, but did not clearly present the issue in the motion for summary judgment. See Brief in Support of Defendant's [sic] Rule 12(b) Motion for Dismissal or Alternatively Rule 56(b) Motion for Summary Judgment at 8-12. Although defendants' summary judgment brief asserts the issue generally as "Defendants Are Entitled to Qualified Immunity" and the conclusory paragraph seeks the entitlement of qualified immunity for "defendants," the body of the qualified immunity argument names only defendants Wentworth and Tessmer. The sloppy draftsmanship displayed here has brought Foltz dangerously close to needlessly waiving his qualified immunity argument. We take the opportunity to remind counsel that issues not raised with specificity risk waiver. However, we decline to address the waiver issue because the district court did not. See Yates v. City of Cleveland, 941 F.2d 444, 448-49 (6th Cir.1991) (declining to dispose of interlocutory appeal on waiver grounds where district court made no findings of frivolousness or waiver as to defendant's failure to raise qualified immunity defense until five years after initial filing).
 
 B.
 
 8
 Foltz is entitled to qualified immunity in the performance of official discretionary functions to the extent that his conduct did not violate clearly established statutory or constitutional rights. Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). A constitutional right is not "clearly established" unless the law is clear in regard to the official's particular actions in the particular situation, such that a reasonable official would understand that what he is doing violates that right. Long v. Norris, 929 F.2d 1111, 1114 (6th Cir.) (citing Anderson v. Creighton, 483 U.S. 635, 639-40 (1987)), cert. denied, 112 S.Ct. 187 (1991). That does not mean, however, that official action is shielded by qualified immunity unless the very action in question has previously been ruled unlawful; but only that in light of preexisting law the unlawfulness is apparent. Id. (citing Anderson, 483 U.S. at 640). Thus, "the particular conduct of the responsible official must fall clearly within the area protected by the constitutional right, such that a reasonable official would know that his or her conduct violated the constitutional right." Id. (citing Anderson, 483 U.S. at 640-41). For purposes of qualified immunity, the relevant state of the law is that which is in existence at the time of the alleged statutory or constitutional violation. Marsh v. Arn, 937 F.2d 1056, 1066 (6th Cir.1991) (citing Davis v. Scherer, 468 U.S. 183, 194 (1984)).
 
 
 9
 In determining whether a constitutional right is clearly established, a district court must find binding precedent by the Supreme Court, its court of appeals, or itself. Walton, 995 F.2d at 1336. Reliance on the decisions of other circuits is also permissible in extraordinary instances, but only if those decisions "both point unmistakenly to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." Id. (citing Ohio Civil Serv. Employees Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir.1988)). Finally, the court may look to the decisions of the highest state court in the state where the case arose. Poe v. Haydon, 853 F.2d 418, 424 n. 2 (6th Cir.1988), cert. denied, 488 U.S. 1007 (1989).
 
 
 10
 Although there was no binding Supreme Court or Sixth Circuit precedent in 1985 to the effect that it was unlawful to transfer small, vulnerable-looking prisoners to unstructured prison camps, the unlawfulness of such an action was apparent in light of pre-existing precedent. See Roland v. Johnson, No. 90-1343, 1991 WL 84346, * 2 (6th Cir. May 22, 1991) (per curiam) (rejecting defendant directors', including Foltz's, claim that they were entitled to qualified immunity in action charging defendants with deliberate indifference to existence of pervasive risk of harm to individuals like plaintiff, who fit known profile of rape victims, stating "[i]t was clearly established in 1983 that prison officials' deliberate indifference to an inmate's safety as threatened by violent attacks of other inmates, including rape, violated the Constitution.") As early as 1982, this court noted that "[i]n some circumstances, the failure to protect inmates from attack by fellow inmates may state a claim under either the 8th Amendment or the 14th Amendment." Stewart v. Love, 696 F.2d 43, 45 (6th Cir.1982) (per curiam) (citations omitted). See also Marsh, 937 F.2d at 1067-68; Walker v. Norris, 917 F.2d 1449, 1453 & n. 7 (6th Cir.1990); McGhee v. Foltz, 852 F.2d 876, 881 (6th Cir.1988) (all relying on Stewart as creating such a right); Redmond v. Baxley, 475 F.Supp. 1111, 1120-21 (E.D.Mich.1979) (defendant director of MDOC had actual awareness of serious risk to plaintiff, an 18-year-old inmate with diabetes and "potentially vulnerable to the coercion of hardened prisoners" raped after being placed in the youth offenders section of SPSM, through police reports, and his own admission that young, slight and fair individuals like the plaintiff were prime candidates for rape); People v. Harmon, 220 N.W.2d 212 (Mich.App.1974), aff'd, 394 Mich 625 (1975) (in case where defendant Foltz himself testified in that case to the effect that "there definitely was a homosexual problem at the institution and that the person generally pressed for sex was one who had a youthful appearance," Michigan appeals court held that defendants charged with escape from custody may raise the defense of duress due to the threat of homosexual attack). In light of the foregoing, we think the unlawfulness of failing to protect vulnerable prisoners was apparent from the preexisting case law.
 
 C.
 
 11
 Foltz also claims that he is entitled to qualified immunity in that he had no personal involvement in the decision to transfer Taylor because he properly delegated that authority to subordinates. This issue really goes to the merits of plaintiff's Eighth Amendment claim, and Foltz's argument is responsive not to whether he knew or should have known that plaintiff had a clearly established constitutional right to be free from homosexual attack, but rather to whether Foltz was deliberately indifferent to plaintiff's constitutional rights. We decline to entertain that aspect of the argument challenging Foltz's defense to liability (no deliberate indifference), being limited at this juncture to defendant's immunity from suit (qualified immunity). See Rich, 955 F.2d at 1094; Huron Valley, 792 F.2d at 568.[3]
 
 
 12
 Accordingly, we AFFIRM the order of the district court denying qualified immunity to defendant Foltz.
 
 
 13
 WELLFORD, Senior Circuit Judge, concurring in part and dissenting in part:
 
 
 14
 I agree with the conclusion in part II.A. in this case that Foltz has not waived the issue of qualified immunity. I am troubled, however, on the question of qualified immunity--whether Taylor "failed to allege the violation of a clearly established constitutional right." See Siegert v. Gilley, --- U.S. ----, 111 S.Ct. 1789, 1792 (1991) (emphasis added). Siegert establishes that the "first inquiry in the examination" of a plaintiff's alleged constitutional claim against a government actor or agency claiming qualified immunity is to determine whether that claim states a violation of an established constitutional right. Id. at 1792.
 
 
 15
 Taylor's claim essentially is that Foltz was deliberately indifferent to his safety, or that he permitted a situation that subjected Taylor to unreasonable or cruel risk of harm and/or danger contrary to Eighth Amendment requirements. It seems to me that under Siegert, in view of Foltz's qualified immunity claim, we must first investigate whether Taylor has, as a matter of law, alleged the requisite constitutional violation. Was there a sufficient allegation of the warden's intentional disregard, or willful disregard of Taylor's constitutional right to protection as a slight, mildly retarded prisoner with a seizure disorder ("a small, vulnerable-looking prisoner")?
 
 
 16
 I respectfully disagree with my colleagues in that I think we must address these questions in this appeal based the defendant's claim of qualified immunity under Siegert. See also Black v. Parke, 4 F.3d 442 (6th Cir.1993); Hutsell v. Sayre, 5 F.3d 996, 1003 (6th Cir.1993); Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir.1992).
 
 
 17
 I dissent, therefore, from part II.C. since I think we must address in this appeal the sufficiency of Taylor's alleged constitutional claim under the circumstances existing at the time of the claimed violation. As in Siegert plaintiff may have set forth an actionable tort but "not a constitutional deprivation." 111 S.Ct. at 1794.
 
 
 
 [1]
 At SMT, plaintiff was housed alone in his cell. Camp Pugsley consists of dormitory style barracks with approximately 60 beds to a room
 
 
 [2]
 Included were a copy of Taylor's presentence report alerting defendants to Taylor's special needs, a psychological profile taken when plaintiff entered the prison, and four major misconduct tickets plaintiff received before being placed in Camp Pugsley
 
 
 [3]
 We believe that our recent decision in Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir.1992), may be determinative of plaintiff's Eighth Amendment claim against defendant Foltz