35 F.3d 566
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
James McCARTHY, individually and as personal representative
of the estate of Mark A. Cox, deceased,
Plaintiff-Appellant, Cross-Appellee,
v.
Dale FOLTZ; John Gauldin; William Moore, Jr.; and Linda
Verlin, Defendants-Appellees, Cross-Appellants.
 Nos. 92-1319, 92-1366.
 United States Court of Appeals, Sixth Circuit.
 Aug. 29, 1994.
 
 Before: KENNEDY, SILER, and BATCHELDER, Circuit Judges.
 PER CURIAM.
 
 
 1
 Plaintiff James McCarthy appeals from the district court's judgment for the defendants, arguing that the court erred in (1) granting judgment as a matter of law against him on his negligence claim; (2) excluding evidence of prison conditions and admitting prejudicial testimony offered by defendant Dale Foltz; (3) failing to enter a default judgment or otherwise sanction the defendants for alleged discovery abuses; and (4) failing to rule on a motion to tax costs. The defendants cross-appeal, arguing that the district court erred in excluding evidence. We affirm.
 
 Background
 
 2
 Mark A. Cox was stabbed and killed by an unknown prisoner at the State Prison for Southern Michigan ("SPSM") in 1986. James McCarthy, the personal representative of Cox's estate, sued under 42 U.S.C. Sec. 1983 and state law against various prison officers. On December 2, 1991, the jury found in favor of the defendants on the Sec. 1983 claim. Specifically, the jury found that the defendants knew of, but were not deliberately indifferent to, a pervasive risk of harm existing at SPSM. The jury also found, however, that the defendants were negligent under state law and awarded $1,250,000 in damages. The district court granted the defendants' motion for a directed verdict on McCarthy's negligence claim, after earlier taking the motion under advisement.[1] The district court determined that governmental immunity barred the negligence claim.
 
 Analysis
 
 3
 1. Judgment as a matter of law.
 
 
 4
 McCarthy argues that the district court erred in granting judgment as a matter of law on his negligence claim. Judgment as a matter of law is appropriate on claims that cannot be maintained under controlling law. See Fed.R.Civ.P. 50(a)(1). Furthermore, we review the district court's decision granting judgment as a matter of law de novo. Montiel v. City of Los Angeles, 2 F.3d 335, 342 (9th Cir.1993). The parties agree that Ross v. Consumers Power Co., 363 N.W.2d 641 (Mich.1984), supplies the standard for determining whether governmental immunity applies in this case. Ross held that
 
 
 5
 [l]ower level officials, employees, and their agents are immune from tort liability only when they are (1) acting during the course of their employment and acting, or reasonably believe they are acting, within the scope of their authority; (2) acting in good faith; and (3) performing discretionary, as opposed to ministerial acts.
 
 
 6
 Id. at 667-68 (footnote omitted). Ross further defined discretionary acts "as those which require personal deliberation, decision and judgment." Id. at 668. Ministerial acts, in contrast, are "those which constitute merely an obedience to orders or the performance of a duty in which the individual has little or no choice." Id. Discretionary acts require significant decision-making while ministerial acts entail the execution of a decision and minor decisionmaking. Id.[2]
 
 
 7
 The district court correctly granted judgment as a matter of law on McCarthy's negligence claim against Foltz and Linda Verlin. Foltz, as warden, was responsible for implementing institutional policy. His acts required significant decisionmaking and are, therefore, protected by immunity. Verlin, as captain, and William Moore, Jr., and John Gauldin, as residence-unit personnel, were required to monitor prisoner movement, control inmate access to their cells, perform rounds, and supervise the performance of rounds. McCarthy does not point to any specific failure to perform these responsibilities. Moreover, the manner in which these responsibilities were performed required significant decisionmaking. Verlin, Moore and Gauldin are entitled to immunity for their acts in carrying out these responsibilities.[3]
 
 
 8
 However, the district court erred in granting judgment as a matter of law on McCarthy's negligence claim against Moore and Gauldin on the basis of governmental immunity, relative to their failure to conduct prisoner and cell searches. Moore and Gauldin, like other residence unit personnel, were required to conduct searches of five prisoners and five cells during each shift worked.[4] See Operating Procedure SMI-OP 30.18. Performance of the searches, as opposed to the manner in which the searches were performed, is a ministerial act for which Moore and Gauldin are not entitled to immunity. See Hickey v. Zezulka, 487 N.W.2d 106, 117 (Mich.1992). Nevertheless, the district court's error was harmless because it also committed plain error in submitting to the jury the issue of whether Moore's and Gauldin's failure to conduct prisoner and cell searches caused the plaintiff's injuries. Moore and Gauldin were only required to search a small percentage of prisoners and cells during each shift and had discretion in choosing where to search. Faithful adherence to SMI-OP 30.18 would, over time, increase the odds of detecting particular weapons. However, the identity of the prisoner who killed Cox and the length of time that the weapon used to perpetrate the killing was in Cox's cellblock are unknown. Without this information, the chances that the weapon might have been detected through adherence to SMI-OP 30.18 are also unknown and one can only speculate as to whether the failure to perform searches actually caused Cox's death and the plaintiff's resulting injuries. Therefore, we conclude that judgment as a matter of law is appropriate on McCarthy's negligence claim against Moore and Gauldin.[5]
 
 
 9
 2. Evidentiary issues.
 
 
 10
 Next, McCarthy argues that the district court erred in excluding reports of prison conditions in the years after Cox's murder and evidence of prison violence occurring after Cox's death. In essence, McCarthy claims that this evidence is pertinent to his Sec. 1983 claim alleging an Eighth Amendment violation because it tends to show that Foltz acted with deliberate indifference to inmate safety by failing to lessen the threat of prison violence. However, this evidence is immaterial because "failure to lessen the threat of violence does not rise to the level of wantonness that is required to find an Eighth Amendment violation." Gibson v. Foltz, 963 F.2d 851, 854 (6th Cir.1992). Therefore, the district court did not err in excluding the evidence. McCarthy further contends that the district court erred in admitting a statement in which Foltz opined that Cox was the victim of a contract murder. However, McCarthy fails to show that admission of this statement was unduly prejudicial because it is not relevant to the bases of our disposition against him. Likewise, McCarthy fails to support his argument that the district court erred in admitting testimony as to the contents of certain prison reports that had been destroyed by the time discovery was sought. For all these reasons, McCarthy fails to demonstrate any error in the district court's various evidentiary rulings.[6]
 
 
 11
 3. Discovery abuses.
 
 
 12
 McCarthy next argues that the district court erred in failing to enter default judgment or otherwise sanction the defendants for alleged discovery abuses. The decision whether to impose sanctions falls within the district court's discretion. Id. Moreover, the record reflects that McCarthy faced difficulties in securing discovery and that the defendants incurred some sanctions. However, McCarthy does not explain the relevance of documents that he was unable to obtain through discovery. Thus, "we have no evidence from which to find that plaintiff has been prejudiced by lack of discovery," and no basis for reversal. Id. at 855. Finally, McCarthy contends that he should have been given additional time before trial to "inventory" and "assess" documents produced by the defendants. However, he "fails to identify what information was supplied so late that [he could not use it]." Id. Thus, McCarthy again fails to demonstrate either prejudice or a basis for reversal.
 
 Conclusion
 
 13
 We AFFIRM the judgment of the district court on all claims. However, as to the decision granting judgment as a matter of law in favor of Moore and Gauldin, we do so on a ground other than that relied on by the district court.
 
 
 
 [1]
 Although the defendants characterized their motion below as a motion for a directed verdict, this nomenclature has been abandoned in the federal rules. See Fed.R.Civ.P. 50, advisory committee notes. Rule 50 now refers to judgments as a matter of law. We utilize the new nomenclature in discussing this appeal
 
 
 [2]
 Michigan's governmental immunity statute has been amended to eliminate the discretionary/ministerial distinction, see Mich.Comp.Laws Sec. 691.1407, although the amendment does not apply in this case
 
 
 [3]
 McCarthy also asserts that Foltz and Verlin failed to make required visits to the residential unit in which Cox was housed during the months preceding his death. See Policy Directive BCF-30.02. Performance of the visits is, apparently, a ministerial act. Nonetheless, the visits were designed to monitor compliance with prison policy and procedure and not as a method of detecting prisoner-borne weapons. Furthermore, McCarthy does not contend that the knife used to stab Cox might have been detected in one of these visits. Thus, there is no legally sufficient evidentiary basis for a jury to find Foltz or Verlin liable to McCarthy for failing to perform the visits
 
 
 [4]
 McCarthy argues that these searches were rarely or never done, that they were the principal method of detecting and deterring prisoner-borne weapons, and that Cox was stabbed to death by a prisoner using a homemade knife that might have been detected in such a search
 
 
 [5]
 January 16, 1986 marked Gauldin's first day of work as a sergeant on the cellblock in which Cox was housed and there is no evidence that he worked there in any other capacity. It is highly unlikely that the weapon used to kill Cox would have been detected on this day. Therefore, the chance that Gauldin's failure to search caused the plaintiff's injuries is especially slim
 
 
 [6]
 The defendants assert, in a cross-appeal, that the district court erred in excluding evidence of Cox's involvement in drugs prior to his imprisonment. We decline to reach this issue in light of our holding that the district court committed plain error in submitting to the jury the question of whether the failure to conduct prisoner and cell searches caused Cox's death