**Homer TUCKER, Enoch Carmichael,
Plaintiffs,**

v.

**Norman ROSE, Joyce Gross, Joan
Kessler, Defendants.**

No. 1:94 CV 544.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 27, 1997.

Homer Tucker, pro se.

Enoch Carmichael, pro se.

Basil J. Musnuff, Cleveland, OH, for defendants.

## MEMORANDUM OF OPINION AND ORDER

NUGENT, District Judge.

This matter is before the Court upon the Defendants' Motion for Summary Judgment (Doc.# 18), filed by Warden Norman Rose (hereinafter "Warden Rose"), Ms. Joyce Gross (hereinafter "Ms. Gross [1]"), and Ms. Joan Kessler (hereinafter "Ms. Kessler"), on April 17, 1995. Defendants' Motion is **GRANTED.**

The Plaintiffs, Mr. Homer Tucker (hereinafter "Mr. Tucker") and Mr. Enoch Carmichael (hereinafter "Mr. Carmichael"), filed this § 1983 action *pro se* while still incarcerated at the Lorain Correctional Institution (hereinafter "LCI").

In their claim, Mr. Tucker and Mr. Carmichael allege that Defendants subjected them to cruel and unusual punishment by knowingly serving contaminated cornstarch to the prison population. Plaintiffs claim that the action of the Defendants violated the Eighth Amendment of the United States Constitution.

Defendants filed a Motion for Summary Judgment on April 17, 1995. Plaintiff, Mr. Tucker filed an Opposition to Defendants' Motion on June 2, 1995. Plaintiff, Mr. Car-

---

1. Ms. Joyce Gross, who was married sometime into the proceedings, changed her name to Mrs. Joyce Griffith. Defendant's maiden name is indicated in the initial pleadings; after April 17, 1995, defendant's married name is used. For the sake of clarity, the Court will refer to her as Ms. Gross.

michael filed an Opposition to Defendants' Motion on August 28, 1995. Defendants filed their reply on August 28, 1995.

Plaintiffs, Mr. Carmichael and Mr. Tucker worked in the kitchen at LCI. On December 13, 1993, Mr. Carmichael pulled bags of cornstarch from the storeroom in Food Service, under the supervision of Ms. Kessler, who was the Food Service Supervisor. Mr. Carmichael alleges that he observed two holes "about the size of a half-dollar made by rodents together with rodent feces inside and outside the bags." Mr. Carmichael informed Ms. Kessler of his observation. Ms. Kessler then phoned her immediate supervisor, Ms. Cutlip, who was employed at the time as Food Service Manager in the LCI Food Service Department. Ms. Cutlip informed Ms. Kessler to order Mr. Carmichael to sift through the cornstarch. If any droppings or other evidence of a rodent were found the entire bag should be discarded; if no droppings or other sign of a rodent were found, the contents of the bag could be used. Ms. Kessler then relayed these instructions to Mr. Carmichael. Ms. Kessler did not hear back from Mr. Carmichael. After the lunch meal had already concluded, Mr. Carmichael went to Ms. Gross, who is the Food Service Manager II, at LCI Food Service Department. Mr. Carmichael informed Ms. Gross that contaminated cornstarch had been served that day. However, Ms. Gross did not receive any complaints that any illness resulted from the December 13, 1993 meal.

In their Motion for Summary Judgment, Defendants argue that the Plaintiffs failed to meet the objective and subjective component of an Eighth Amendment claim and that the Plaintiffs failed to show any involvement of Warden Rose.

### Motion for Summary Judgment

Summary judgment is appropriate where a court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED.R.CIV.P. 56(c). The burden of showing the absence of any such "genuine issue" rests with the moving party:

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.

*Celotex v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986) (citing FED.R.CIV.P. 56(c)). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby,* 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. A court will view the summary judgment motion "in the light most favorable to the party opposing the motion." *U.S. v. Diebold, Inc.,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962), *see also U.S. v. Hodges X–Ray, Inc.,* 759 F.2d 557, 562 (6th Cir.1985).

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of their case. *Tolton v. American Biodyne, Inc.,* 48 F.3d 937, 941 (6th Cir.1995) (citing *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552). Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff." *Copeland v. Machulis,* 57 F.3d 476, 479 (6th Cir.1995) (quoting *Anderson,* at 252, 106 S.Ct. at 2512 (1986). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," a court may decide the legal issue and grant summary judgment. *Anderson,* 477 U.S. at 249–50, 106 S.Ct. at 2510–11 (citation omitted). In most civil cases involving summary judgment, a court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [nonmoving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. at 2512. However, if the nonmoving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard. *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir.1989).

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover. The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury." *Cox v. Kentucky Department of Transportation,* 53 F.3d 146, 149 (6th Cir.1995). The text of FRCP 56(e) states:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

*Id.* The Federal Rules identify the penalty for the lack of such a response by the non-moving party as an automatic grant of summary judgment, where otherwise appropriate.

■ Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that, " 'it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment.' " *Wiley v. U.S.,* 20 F.3d 222 (6th Cir.1994) (quoting *Beyene v. Coleman Sec. Servs., Inc.,* 854 F.2d 1179, 1181 (9th Cir.1988)). Rule 56(e) also has certain, more specific requirements:

[it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.

*Wiley,* at 225–26 (citations omitted). However, evidence not meeting this standard may be considered by a district court unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.

*Id.* at 226 (citations omitted).

As a general matter, a district judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law." *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510. A court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter. *Id.* at 249, 106 S.Ct. at 2510. A judge's sole function is to determine whether there is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." *Id.*

In sum, proper summary judgment analysis entails:

the threshold inquiry of determining whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.

*Anderson,* 477 U.S. at 250, 106 S.Ct. at 2511.

### Discussion

■ The U.S. Supreme Court held that, "[t]he Eighth Amendment, which applies to the States through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of 'cruel and unusual punishments' on those convicted of crimes." *Wilson v. Seiter,* 501 U.S. 294, 296, 111 S.Ct. 2321, 2322, 115 L.Ed.2d 271 (1991). The Court ruled that the Eighth Amendment applies to deprivations not only relating to the sentence, but also to the conditions of confinement. *Id.; see also Estelle v. Gamble,* 429 U.S. 97, 103, 97 S.Ct. 285, 290, 50 L.Ed.2d 251 (1976). However, the Court did not find that every deprivation denotes a constitutional infringement; only the "unnecessary and

wanton infliction of pain" implicates the Eighth Amendment. *Wilson,* 501 U.S. at 296, 111 S.Ct. at 2322. The Sixth Circuit has held that the alleged violative conditions of confinement, " 'considered alone or in combination with other conditions,' must amount to *a deprivation of 'life's necessities,'* before a violation of the eighth amendment [sic] can be found." *Walker v. Mintzes,* 771 F.2d 920 (6th Cir.1985) (quoting *Rhodes v. Chapman,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981) (internal quotes omitted) (emphasis added).

A claim arising under the Eighth Amendment has both objective and subjective elements. The objective element of such a claim requires that the deprivation be "sufficiently serious." *Id.* at 298, *see also Rhodes v. Chapman,* 452 U.S. 337, 348–49, 101 S.Ct. 2392, 2400–01, 69 L.Ed.2d 59 (1981). Conditions of confinement are constitutionally violative only if they result in "unquestioned and serious deprivations of basic human needs." *Rhodes,* 452 U.S. 337, 347, 101 S.Ct. 2392, 2399, 69 L.Ed.2d 59 (1981). The Sixth Circuit added that, "a plaintiff's Eighth Amendment claim may not be based on the totality of the circumstances, but rather must identify a specific condition that violates the inmate's right to personal safety." *Walker v. Mintzes,* 771 F.2d 920, 925 (6th Cir.1985). The Circuit Court further held that, "[o]nly those deprivations denying 'the minimalized measure of life's necessities' may form the basis of an Eighth Amendment violation." *Gibson v. Foltz,* 963 F.2d 851 (6th Cir.1992) (quoting *Wilson v. Seiter,* 501 U.S. 294, 111 S.Ct. 2321, 115 L.Ed.2d 271 (1991)).

The subjective element of an Eighth Amendment claim mandates an inquiry into the prison official's mental state. The Supreme Court held that the official must have acted with a "sufficiently culpable state of mind." *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324. The Court determined that an official's "mere inadvertence or error in good faith" does not rise to the level of a constitutional violation; rather, a successful Eighth Amendment claim must entail conduct which is characterized by "obduracy and wantonness." *Id.* (citation omitted). The Sixth Circuit, in *Doe v. Sullivan County, Tennessee,*

956 F.2d 545 (6th Cir.1992), interpreted the Supreme Court's reasoning as follows:

> [T]o support an action under section 1983, plaintiffs must establish something more than lack of ordinary due care, in advertence or error. Instead, *the conduct must be 'obdurate' or 'wanton' i.e., a reckless or callous neglect.* This standard is designed to strike an appropriate balance between the deference that should be accorded to prison officials in the administration of the prison and the constitutional right of prisoners to be free from cruel and unusual punishment.

*Id.* at 550 (emphasis added).

In order for a court to determine an official's state of mind, *i.e.* identify conduct which is obdurate or wanton, it must apply the legal standard of "deliberate indifference." *Wilson,* 501 U.S. at 298, 111 S.Ct. at 2324; *accord Doe,* 956 F.2d at 550. The Sixth Circuit has held that an official's conduct, undertaken with deliberate indifference to a prisoner's serious medical need or risk of injury, is determinative of whether that official has inflicted cruel and unusual punishment. *Gibson v. Foltz,* 963 F.2d 851 (6th Cir.1992); *see also Wilson,* 501 U.S. at 296, 111 S.Ct. at 2322; *Doe,* 956 F.2d at 550.

In this case, Defendants deny the presence of any rodents in the Food Service area on December 13, 1993. Ms. Kessler, indicates in her affidavit, that there were no droppings in the vicinity of the cornstarch bag; and there was no evidence of the presence of a rodent. Further, Lieutenant Patricia McCormack indicated in her affidavit that she is the Safety and Health Officer at LCI, who had examined the Food Service area soon after Mr. Carmichael spoke to her about the incident; and she saw no foreign matter or evidence of the presence of a rodent.

Even if the allegations regarding the presence of a rodent were true, such allegations would still only be isolated incidents, and do not become an Eighth Amendment violation solely because the Plaintiffs are prisoners. *Estelle v. Gamble,* 429 U.S. 97, 106, 97 S.Ct. 285, 292, 50 L.Ed.2d 251 (1974). Lieutenant McCormack stated that there has

never been an ongoing infestation of rodents at LCI or in the Food Service area. Lieutenant McCormack further stated that there have been only two isolated instances of the presence of mice in the Food Service area, since she has assumed her position in April 1992. Further, Ms. Gross indicated in her affidavit that while there have been isolated instances evidencing the presence of a mouse or mice in the dry storage area of the Food Service, there has never been a continuous problem of mice in any area of the Food Service at LCI.

■■■■■ The occasional presence of a rodent is insufficient to establish the objective component of an Eighth Amendment claim, which requires that a deprivation be sufficiently serious. Rodents have been detected very infrequently in the Food Service area, and they have never presented a significant problem at LCI in the Food Service. Therefore, Plaintiffs do not meet the objective component of the Eighth Amendment.

Since any Eighth Amendment claim requires the fulfillment of both prongs and Plaintiffs have not proven any serious deprivation of basic needs, they have already failed to meet their burden. However, an analysis of the second prong for inadequate prison conditions reveals that the Plaintiffs fail with regard to this prerequisite as well.

■■■■■ The Eighth Amendment prohibits cruel and unusual punishment, and implicit in the notion of punishment is intent. *Wilson,* 501 U.S. at 301, 111 S.Ct. at 2325. Consequently, any inhumane conditions of confinement must involve intent in order to stand as an Eighth Amendment claim. *Id.* In addressing the specific level of required intent, the Supreme Court has held that liability results only when the official knows of, yet disregards an excessive risk to an inmate's health and safety. The official must essentially be willfully indifferent to a serious harm. *Farmer,* 511 U.S. 837, 114 S.Ct. at 1979; *Wilson,* 501 U.S. at 297, 111 S.Ct. at 2323; *Estelle,* 429 U.S. at 106, 97 S.Ct. at 292. In the present case, Ms. Gross had no knowledge of the incident on December 13, 1993, until the lunch meal was over and the alleged tainted food was served. Based upon Ms. Gross's undisputed affidavit, she had no

prior knowledge of the possibility of Plaintiffs' food being tainted. The undisputed fact mandates the conclusion that none of her actions resulted in a constitutional deprivation to either Mr. Tucker's and Mr. Carmichael's human needs, or to their minimal measure of life's necessities. The evidence before the Court demonstrates that none of Ms. Gross's actions resulted in a constitutional deprivation to Plaintiffs. Further, the Court finds that because Ms. Gross did not have any knowledge of any possible problem, she could not have acted, as a matter of law, with deliberate indifference to that problem.

Further, there is no evidence before this Court demonstrating that any Defendant acted with deliberate indifference to the situation that was presented on December 13, 1993. Moreover, there is no evidence before this Court to show that any Defendant, at any time, has been deliberately indifferent to the possible presence of rodents in LCI's Food Service area.

■■■■■ Defendant, Ms. Kessler was presented with a bag of cornstarch with a hole, the origin of which was unknown to her. She recognized that it could have been a slight tear or it could have been gnawed by a rodent. Based upon Ms. Kessler's affidavit, she called her immediate supervisor Ms. Cutlip to inform her of this occurrence. Ms. Cutlip instructed Ms. Kessler to tell Mr. Carmichael to sift through the bag of cornstarch; and if he saw any droppings, hair, or any other indication of a rodent, to throw away the bag. After giving Mr. Carmichael these instructions, Ms. Kessler heard nothing further in relation to the cornstarch. Ms. Kessler acted with proper care by consulting her immediate superior, Ms. Cutlip. Ms. Cutlip, rather than ignoring the possibility, proposed a way to determine whether a rodent was present.

■■■ In this case, there is no genuine issue as to any material fact to support the claim that LCI was deliberately indifferent to the possible presence of rodents at the facility. Lieutenant McCormack stated that she has a series of contracts with professional pest control companies to minimize or eliminate the presence of insects and rodents

at the institution. The pest control companies come to LCI twice a month to take preventative measures against infestation. The companies treat certain areas, including the entire Food Service area, and conduct an inspection for the presence of insects and rodents on a regular basis. Ms. Gross and Ms. Kessler did not act with deliberate indifference. Therefore, Plaintiffs do not meet the subjective component of the Eighth Amendment.

 Further, Plaintiffs fail to allege any personal participation on the part of Defendant, Warden Rose. Plaintiffs failed to allege that Defendant, Warden Rose failed to supervise or in some manner control the actions of the persons directly involved in the incident complained of by Plaintiffs. To establish liability under 42 U.S.C. § 1983, a plaintiff must plead and prove that a defendant is personally responsible for the unconstitutional actions that injured him. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). It is firmly established that *respondeat superior* cannot form a basis for liability under Section 1983. *Bellamy v. Bradley,* 729 F.2d 416, 421 (6th Cir.1984); *see also Polk County v. Dodson,* 454 U.S. 312, 325, 102 S.Ct. 445, 453, 70 L.Ed.2d 509 (1981). In this case, Warden Rose was not the Warden at the time the alleged incidents occurred; and there are no allegations claiming any personal involvement, on his part, in the matters raised in the Complaint. Therefore, there are no genuine issue of material fact that exists in the case as to Warden Rose.

### Conclusion

Based upon the foregoing reasons, Defendants' Motion for Summary Judgment filed by Warden Rose, Ms. Gross, and Ms. Kessler (Doc. # 18) is **GRANTED**.

**IT IS SO ORDERED.**